UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT
N-18-1

| | |
|---|---|
| UNITED STATES OF AMERICA | Case No. 3:19CR134-KAD (handwritten) |
| v. | VIOLATION: |
| LAQUASIA SAMMS, a.k.a. "Quasia" | 18 U.S.C. § 1623 (False Declarations Before Grand Jury) |

INDICTMENT

The Grand Jury charges:

INTRODUCTION

1. At all times relevant to this indictment Federal Grand Jury N-18-1 was investigating the activities of Target One and Target Two, both of whom are known to the Grand Jury, in connection with the kidnapping and murders of Victim One and Victim Two, and the related murder of Victim Three, on November 16, 2015.

2. The kidnapping began at a location in New Haven, Connecticut, known to the Grand Jury, and referred to here as "the Location."

3. Victim One and Victim Two were kidnapped and killed in New Haven County on or about November 16, 2015. Victim Three was killed in New Haven County later that same date.

4. Individual One and Individual Two participated in a theft of firearms from the Location on November 16, 2015.

5. Individual Three exchanged text messages with the defendant, LAQUASIA SAMMS, a.k.a. "Quasia," about the time of the kidnapping and murders.

6. The identities of Victim One, Victim Two, Victim Three, Individual One,

1

Individual Two, and Individual Three are known to the Grand Jury.

## COUNT ONE

7. On or about March 19, 2019, in the District of Connecticut, Grand Jury N-18-1, a Grand Jury of the United States in the District of Connecticut, (the "Grand Jury") was conducting an investigation of the kidnapping resulting in death of Victim One and Victim Two, as well as the murder of Victim Three, all of which occurred in New Haven County on or about November 16, 2015, in violation of Title 18, United States Code, Sections 1201(a)(1), 924(c)(1)(A) and 924(j)(1).

8. It was material to that investigation that the Grand Jury learn the facts and circumstances surrounding what occurred at the Location on or about November 16, 2015, where SAMMS then resided and was present, including information concerning a theft of firearms, and the events leading up to and resulting in the kidnapping and murders of Victim One and Victim Two, and the murder of Victim Three.

9. On March 19, 2019, the defendant LAQUASIA SAMMS, a.k.a. "Quasia," appeared as a witness under oath with the protection of an immunity order, and did knowingly make false material declarations in a proceeding before the Grand Jury, regarding her knowledge of what occurred at the Location on or about November 16, 2015, and her knowledge of text messages that SAMMS sent to and received from other individuals concerning the kidnapping and death of the victims, in response to questions with respect to the material matters alleged in Paragraph 8 as follows, with the false declarations in bold and underscore:

10. SAMMS testified as follows at page 36, lines 14-23 and page 37, lines 2-5, of the transcript of her Grand Jury testimony:

Q  Ms. Samms, do you remember having conversation via text with anyone about what was happening at your house when you were sitting in that family room?

A  **No.**

Q  Could you have had a conversation with someone about what was going on at your house?

A  **I didn't know what was going on at my house.**

Q  Okay

By [Assistant United States Attorney]

Q  But that's your phone number, right?

A  Yes.

Q  You had your phone, right?

A  Yes.

\* \* \*

11.  SAMMS testified at page 37, line 12 to 25, and page 38, lines 2 to 5, as follows:

Q  Do you recall sending a text saying, He didn't say nothing to me. He said something about the situation and I spazzed on everyone?

A  **No.**

Q  No? You don't remember sending a text –

A  **No.**

Q  – about what was going on at your house? No?

A  **No.**

Q  Could you have sent a text about what was going on at your house?

A  **I didn't know what was going on so I didn't say nothing that was going on at the house.**

Q  Okay.

> By [Assistant United States Attorney]

Q  So your testimony is you did not send that text?

A  **No.  I don't remember sending any – I don't even know what she's talking about.**

\* \* \*

12.   SAMMS testified at page 41, line 7 to 15, as follows:

> Q  Okay.  And the fact that they wanted the money back, you even knew how much it was.  You sent a text saying it was $800.  Do you remember that?
>
> A  **I didn't know about no money.**
>
> Q  Okay.  Do you remember having a conversation with [Individual One] about getting the money back and you responding that it's $800?
>
> A  **No.**

\* \* \*

13.   SAMMS testified at page 41, line 25, page 42, lines 1 to 25, and page 43, lines 1 to 3, as follows:

> Q  Okay.  And you recognize this number, that being your number; is that correct?
>
> A  Yes.
>
> Q  And you also recognize the fact that these conversations that you're seeing – take a moment if you need it – are occurring with [Individual Three's nickname] who you said is [Individual Three] is that right?
>
> A  Right.
>
> Q  Okay.  And you also recognize the part where you say, Tell me why they took the money.  Right?

    A  I see it.

    Q  Okay. And you recognize your text saying that it was $800?

    A  **I don't remember that though.**

    Q  I'm not asking if you remember. I'm saying you recognize your phone number with a text saying like $800?

    A  Right.

    Q  So you may not remember right now but back at the time you knew that they were after [Victim 1] right? They were after [Victim 1] to pay for money for the guns that were taken?

    A  **No.**

    Q  That's not what you sent the $800 for, that text?

    A  **No.**

    Q  Why did you send that?

    A  **I don't remember that.**

    \* \* \*

14.    SAMMS testified at page 43, lines 14 to 20, as follows:

    Q  Okay. And do you remember having a conversation with [Individual 3] via the text that [Target 1] was going to keep people in the house until he got his money?

    A  **No.**

    Q  You don't remember that?

    A  **No.**

    \* \* \*

15.    SAMMS testified at page 46, lines 20 to 22, as follows:

    Q  Do you recall texting [Individual 3], [Individual 3], that you felt really guilty about this whole thing?

5

    A  <u>**No.**</u>

\* \* \*

16.    SAMMS testified at page 48, lines 11 to 25, and page 49, lines 1 to 6, as follows:

    Q  And you recall texting sometime after this – again, this is after you would have found out that those boys were killed – quote, I'm really angry that this whole shit happened?

    A  <u>**No.**</u>

    Q  You don't recall that?

    A  <u>**No.**</u>

    Q  This is your number right here, 203-###-####; is that right?

    A  Yes.

    Q  And you see this date, 11-18-2015?

    A  Yes.

    Q  And you see where the text says, I'm really angry that the whole shit happened?

    A  Yes. But I don't know who did it.

    Q  All right. Well, this is the part of the time, Ms. Samms, where I want to remind you that you're under oath and you could be subject to prosecution.

    A  I understand that <u>**but I don't remember that.**</u>

\* \* \*

17.    SAMMS testified at page 49, lines 21 to 24, as follows:

    Q  What were you so upset about? Why did you feel so guilty?

      A  <u>I don't know.</u>

      \* \* \*

18.     SAMMS testified at page 50, lines 15 to 25, page 51, lines 1 to 25, and page 52, lines 1 to 2, as follows:

    Q  That's your phone, correct?

    A  Yes.

    Q  That's your friend, correct?

    A  Right.

    Q  And you're not saying – you're just saying I don't remember. You want the Grand Jury to believe that you don't remember sending –

    A  <u>I don't remember none of those conversations.</u>

    Q  That's your testimony?

    A  Yes.

    Q  Remember we talked about how saying I don't remember if you do remember –

    A  <u>I really don't though.</u>

    Q  Remember how I told you that in saying I don't remember if you do remember doesn't protect from you –

    A  I understand that.

    Q  – perjury? But nonetheless, you're testifying before the Grand Jury that this series of texts – how often has it happened in your apartment that people in your apartment, somebody is dead the next day or that day? Is that something that happens often?

    A  No.

    Q  This is an unusual event, correct?

    A  Right.

    Q  And – I want to make sure – your testimony is you don't remember sending any of those texts?

    A  <u>**I really don't.**</u>

    Q  And you don't remember receiving any of those texts?

    A  Receiving?

    Q  Getting the texts from [Individual 3]. You don't remember those texts?

    A  <u>**I don't**</u>.

\* \* \*

21.    SAMMS testified at page 53 lines 9 to 25, and page 54, lines 1 to 20, as follows:

    Q  So going back to what [Assistant United States Attorney] has said, three people that were at your house that night involved in a gun transaction ended up dead hours after, right?

    A  Yes.

    Q  And this is something that's out of the ordinary I would imagine, right?

    A  Right.

    Q  And we already talked about the fact that you were very upset that night; is that correct?

    A  Yes.

    Q  You were upset that there were guns in your house where your child lives?

    A  Right.

    Q  But your testimony here before this Grand Jury is that you don't remember anything that happened in regards to these text message?

    A  <u>**No.**</u>

    Q  You don't remember making statements about being guilty, feeling guilty about this incident?

    A  **No,** because I don't know what there was to feel guilty for.

    Q  And you don't remember having a conversation with [Individual 3] where you're upset with your mom?

    A  **No.**

    Q  And you don't remember having text messages with [Individual One] talking about getting the guns back?

    A  I don't even remember having his number.

    Q  And you don't remember having conversations via text message with [Individual Three] about how much money that [Target One] got from [Victim One]?

    A  **No.**

    Q  You don't remember any of that?

    A  **No.**

\* \* \*

19.    SAMMS testified at page 58, line 24 to 25, and page 59, lines 1 to 23, as follows:

    Q  Do you recall this text on 11-17-2015, really can't stop thinking, I feel so bad and guilty?

    A  **No.**

    Q  You don't recall sending that?

    A  **No.**

    Q  And you don't recall as you sit here today why you would feel guilty about those three individuals losing their lives?

    A  Right. Because I don't have nothing to do with that so why would I feel guilty?

Q   But that wasn't the question. You don't recall as you sit here today why you would feel guilty, right?

A   **Right.**

Q   Is it safe to say if I take you through all these texts you're not going to remember any of these texts that you had with [Individual 3]?

A   **I don't remember having those conversations about whatever happened.** Like, what is there to feel guilty about?

Q   Do you recall after you sent her that, I really can't stop thinking, I feel so bad and so guilty, her response to you was, You and me both?

A   **No.**

\* \* \*

All in violation of Title 18, United States Code, Section 1623.

A TRUE BILL

/s/

FOREPERSON

LEONARD C. BOYLE
FIRST ASSISTANT UNITED STATES ATTORNEY

ANTHONY E. KAPLAN
ASSISTANT UNITED STATES ATTORNEY

PETER D. MARKLE
ASSISTANT UNITED STATES ATTORNEY

JOCELYN COURTNEY KAOUTZANIS
ASSISTANT UNITED STATES ATTORNEY

SETH R. GARBASKY
SPECIAL ASSISTANT UNITED STATES ATTORNEY

LISA D'ANGELO
ASSISTANT STATES ATTORNEY